1

2

3

4

5

6

7

8                       UNITED STATES DISTRICT COURT

9                       EASTERN DISTRICT OF CALIFORNIA

10

11    HENRY'S BULLFROG BEES, et al.,            No. 2:21-cv-00582-DJC-CKD

12                    Plaintiffs,

13            v.                                 **<u>ORDER</u>**

14    SUNLAND TRADING, INC., et al.,

15                    Defendants.

16

17          This action involves a suit by three domestic honey producers who claim that

18    organizations involved in the import, certification, and sale of foreign honey have

19    conspired to import fake honey into the United States and sell it to consumers as real

20    honey.  Defendants have filed multiple Motions to Dismiss including a Joint Omnibus

21    Motion to Dismiss in which they argue that the Second Amended Complaint ("SAC") is

22    grounded in allegations of fraud but mostly consists of broad generalizations and thus

23    fails to meet the particularity requirement of Federal Rule of Civil Procedure 9(b).

24          For the reasons stated below, the Court grants Defendants' Joint Omnibus

25    Motion to Dismiss (ECF No. 103).

26    ////

27    ////

28    ////

**BACKGROUND**

## I.   Factual Background

Plaintiffs are three U.S.-based honey producers who are suing several organizations connected to the import, certification, and sale of foreign honey inside the United States.  Plaintiffs believe that this imported honey is "fake", meaning that it is honey that has been mixed with non-honey syrups or processed with resin technology.  Defendants Sunland Trading, Inc., Lamex Foods, Inc., and Odem International Inc. ("Importer Defendants" collectively) allegedly knowingly import fake honey into the United States to be packaged and sold within the United States by Defendants Barkman Honey LLC and Dutch Gold Honey, Inc. ("Packer Defendants" collectively) who are also aware the honey is fake.  Defendant True Source Honey LLC is a trade organization that Plaintiffs claim was created in response to prior scandals involving foreign honey and was converted into a way to certify that honey was ethically sourced.  Plaintiffs allege that to conceal that their honey is of lower quality, the Importer and Packer Defendants rely on Defendant True Source to mark their imported honey as "True Source Certified" even though it is not "real" honey.  Defendants thereby mislead business and consumers.  Defendant True Source is allegedly aided in providing these fraudulent certifications by Defendant Intertek Food Services GmbH ("Intertek"), a food testing lab, and Defendant NSF International ("NSF"), an auditing organization, both of whom are employed by Defendant True Source (collectively, the "Certifier Defendants").

All Defendants who have appeared have filed a Joint Omnibus Motion to Dismiss which has been fully briefed.[1]  (Joint Mot. (ECF No. 103); Opp'n to Joint Mot. (ECF No. 110); Joint Reply (ECF No. 116).)  Five Defendants have also filed other

---

[1] Defendant Intertek Food Services GmbH has not appeared in this action.  Plaintiffs previously voluntarily dismissed "Intertek Testing Services, NA, Inc." (*see* ECF Nos. 8, 9) but subsequently named Intertek Food Services GmbH as a defendant in their Second Amended Complaint (*see* SAC (ECF No. 98)).  To date, Intertek Food Services GmbH has not appeared and did not join any of the motions filed by other Defendants.  For simplicity, the Court's utilizes the term "the Defendants" throughout this order.  Unless otherwise noted, such references do not include Intertek Food Services GmbH.

1    individual Motions to Dismiss which are also fully briefed. (*See* Dutch Gold Mot. (ECF

2    No. 102); Sunland Mot. (ECF No. 104); True Source Mot. (ECF No. 106); Odem Mot.

3    (ECF No. 107); Lamex Mot. (ECF No. 108).) The Court held oral argument on all these

4    motions on February 15, 2024, and took the matters under submission at that time.

5    (*See* 2/15/24 Tr. (ECF No. 140).)

6    **LEGAL STANDARD**

7        A party may move to dismiss for "failure to state a claim upon which relief can

8    be granted." Fed. R. Civ. P. 12(b)(6). Where allegations of fraud are raised, Federal

9    Rule of Civil Procedure 9(b) imposes a heightened pleading standard. Fed. R. Civ. P.

10    9(b). "Rule 9(b) serves three purposes: (1) to provide defendants with adequate

11    notice to allow them to defend the charge and deter plaintiffs from the filing of

12    complaints 'as a pretext for the discovery of unknown wrongs'; (2) to protect those

13    whose reputation would be harmed as a result of being subject to fraud charges; and

14    (3) to 'prohibit [ ] plaintiff[s] from unilaterally imposing upon the court, the parties and

15    society enormous social and economic costs absent some factual basis.'" *Kearns v.*

16    *Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009).

17        Under Rule 9(b), when a claim or complaint is "grounded in fraud", that claim or

18    complaint must satisfy the particularity requirement, which mandates that the plaintiff

19    "state with particularity the circumstances constituting fraud or mistake." *Kearns*, 567

20    F.3d at 1127 (quoting Fed. R. Civ. P. 9(b)). This is a heightened standard that

21    obligates the plaintiff to "aver with particularity the circumstances constituting the

22    fraud." *In re GlenFed Sec. Litig.*, 42 F.3d 1541, 1547 (9th Cir. 1994) (en banc). This

23    requires that "the circumstances constituting the alleged fraud be specific enough to

24    give defendants notice of the particular misconduct . . . so that they can defend

25    against the charge and not just deny that they have done anything wrong." *Kearns*,

26    567 F.3d at 1124. This generally means that parties must allege the "who, what, when,

27    where, and how" of the alleged fraud and misconduct at issue. *Id.* at 1126. Put

28    another way, "[Rule] 9(b) requires a pleader of fraud to detail with particularity the

3

1    time, place, and manner of each act of fraud, plus the role of each defendant in each

2    scheme." *Lancaster Cnty. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405 (9th

3    Cir. 1991).  These allegations must be "*more* than the neutral facts necessary to

4    identify the transaction." *Kearns*, 567 F.3d at 1124 (emphasis in original) (internal

5    citation and quotation omitted).

6        Individual claims or an entire complaint may be "grounded" in fraud.  Where an

7    entire complaint is grounded in fraud, the allegations therein must satisfy the

8    particularity requirement.  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th

9    Cir. 2003); *see Kearns*, 567 F.3d at 1127.  Rule 9(b) applies even where fraud is not a

10    traditional element of a claim if the plaintiff chooses to allege fraudulent conduct.

11    *Vess*, 317 F.3d at 1103.

12                         **DISCUSSION**

13    **I.**      **The Second Amended Complaint is Grounded in Fraud**

14        The allegations in the Second Amended Complaint (SAC (ECF No. 98)) are

15    grounded in fraud.  *See Vess*, 317 F.3d at 1107.  In the introduction to the SAC,

16    Plaintiffs claim that "[f]or years, Defendants have participated in a worldwide

17    conspiracy to defraud the United States honey market . . . ."  (SAC ¶ 1.)  Defendants'

18    alleged intent to defraud underpins the entire SAC, including a full section within

19    Plaintiffs' factual allegations entitled "Defendants' Scheme to Defraud the United

20    States' Honey Market" wherein Plaintiffs allege that the Certifier, Importer, and Packer

21    Defendants were all involved in a scheme to commit fraud.  (SAC at 17–42.)  The SAC

22    is centrally focused on and comprised of allegations that the Defendants engaged in a

23    joint concerted effort to defraud the United States honey market.  As such, the

24    Complaint is grounded in fraud.  *See Vess*, 317 F.3d at 1107.  Plaintiffs do not contest

25    that the SAC is grounded in fraud and instead argue that they have satisfied the

26    requirements of Rule 9(b).  (*See* Opp'n to Joint Mot. at 2.)  The SAC is therefore

27    subject to the particularity requirement of Rule 9(b).

28    ////

**II.     The Second Amended Complaint Fails to Satisfy Rule 9(b)**

Plaintiffs have failed to allege sufficient facts to satisfy the particularity requirement of Rule 9(b).  Plaintiffs allege that the Defendants are involved in a scheme to import lower quality honey into the United States and present it as "real" honey using the True Source certification.  But the SAC lacks sufficient specific factual allegations to support these claims of fraud.

While Plaintiffs need not provide "absolute particularity" including a precise time frame, the details of a single specific transaction, or the methods used to carry out the fraud, "[b]road allegations that include no particularized supporting detail do not suffice . . . ."  *United States v. United Healthcare Ins.*, 848 F.3d 1161, 1180 (9th Cir. 2016).  Plaintiffs must still provide the "who, what, when, where, and how" of the fraud alleged so that Defendants have notice of the particular fraudulent conduct and can defend against the charge.  *Benavidez v. County of San Diego*, 993 F.3d 1134, 1145 (9th Cir. 2021).

Despite its length, the SAC is largely bare of non-conclusory allegations related to the actual fraud alleged.  Plaintiffs claim that the Defendants have conspired to import fake honey but the SAC lacks any of the particularized details necessary to support such claims.  A large portion of the factual allegations in the SAC discuss the creation of honey via maturation and ripening in the hive (SAC ¶¶ 18–28), the United States honey market and worldwide honey production (*id*. ¶¶ 30–44), honey adulteration techniques and methods for detection of "fake" honey (*id*. ¶¶ 45–58), and the history and function of True Source Honey (*id*. ¶¶ 59–73, 75–78, 80).

Beyond this general background, Plaintiffs separate their allegations relevant to the three groups of Defendants: Certifiers, Importers, and Packers.  Even the allegations related to specific Defendants fail to satisfy the particularity requirement as they are either not directly related to Plaintiffs' claims or do not provide specific information relevant to the misconduct alleged.

////

**A. Certifier Defendants**

For the Certifier Defendants, Plaintiffs include only two allegations that are directly related to the alleged fraud.  These are missing vital information necessary to satisfy the particularity requirement of Rule 9(b) and cannot support Plaintiffs' broad claims.

Plaintiffs allege that Defendant NSF conducts "sham audits" which Defendant True Source "enables . . . by providing . . . a PowerPoint presentation outlining cursory auditing process it must use to ensure any exporter or packer will 'pass'" (*id*. ¶ 97) but do not provide any details about when or where these audits occurred, why they constituted "sham" audits, when the alleged PowerPoint was provided, or what the relevant contents of that PowerPoint were that "enabled" this behavior.

Similarly, Plaintiffs' second relevant allegation is that Defendant NSF accepted a bribe from a honey exporter who was seeking to ensure it would receive True Source Certification.  Yet the SAC lacks all of the necessary "who, what, when, where, and how" details for this event.  Instead, this allegation is relegated to a single sentence with none of the additional information that would be necessary for Defendants to be given a chance to mount a defense.  Similarly, Plaintiffs later state that at a 2018 meeting of True Source, "NSF reported that it had observed extraneous syrups and resin technology in Indian honey factories," and was told not to include that in a report by True Source.  (SAC ¶ 103.)  But again, Plaintiffs provide none of the information necessary to satisfy the particularity requirement, nor is there a clear connection between the alleged observations of NSF and the fraud alleged by Plaintiffs.

Plaintiffs also include several allegations that are, at best, of limited relevance to their claim.  These mostly concern allegations that the Certifier Defendants failed to implement more effective testing methods to detect adulteration and their awareness of the risk of adulterated honey.  (SAC ¶¶ 89–94.)  Other factual allegations that are of minimal relevance include a presentation about the use of resin technology given at a 2015 True Source meeting by an individual later selected as Vice Chair of True Source

(SAC ¶ 100), a letter written in 2016 by an FDA chemist stating that honey treated with resin "would not accurately identify food generally understand [sic] to be honey" (SAC ¶ 101), and the removal of the previous True Source Vice Chair because he had "begun presenting compelling evidence of adulteration in the international honey market" (SAC ¶ 102).

In sum, the allegations against the Certifier Defendants consist of conclusory statements, claims that are only tangentially relevant, and a few allegations that lack any specific information.  The SAC provides almost no information about Defendant Certifiers' actual alleged misconduct beyond a few allegations lacking in particularity. The included factual allegations cannot satisfy the requirements of Rule 9(b) as they fail to give the Defendants notice of the factual basis for what they are accused of such that they can defend against the claim.  *See Kearns*, 567 F.3d at 1124.

## B.  Importer Defendants

### 1.  List of Shipments Received

The bulk of Plaintiffs' factual allegations for the Importer Defendants is a list of honey shipments each Importer Defendant allegedly received from foreign producers.  (*Id*. ¶¶ 121–125.)  For each shipment, Plaintiffs use identical, generic allegations that the honey exporter for each shipment was known to use fake or adulterated honey and that the relevant Importer Defendant knew this to be the case. (*Id.*)  Plaintiffs do not include any specific factual basis for these claims, such as how the honey was fake or adulterated[2], how it was known that the particular shipment contained fake honey, and how the Certifier and Importer Defendants would have been aware of this.  Thus, while the SAC may identify shipments, the SAC lacks any meaningful particularized detail about the shipments.  Plaintiff appears to have

---

[2] As to each shipment, Plaintiffs allege the relevant Importer Defendant knew that the exporter's honey "contained extraneous syrups and/or was processed with resin technology . . . ." (*See, e.g.*, SAC ¶ 121.a.)  These are broad allegations that effectively amount to a claim that the honey in question was "fake" and lack any specificity.  That Plaintiffs have alleged this for each shipment further crystalizes that this is a general allegation.

attached a general boilerplate accusation to a list of foreign honey shipments.  It is not even clear that the alleged shipments were a part of the conspiracy alleged in the SAC given Plaintiffs do not claim that any of the honey in these shipments was sold to the Packer Defendants.  Instead, the SAC only states that each shipment was "sold [by the relevant Importer Defendant] . . . to various entities in the United States' honey market, including California."  (*Id.*)

Moreover, based on the allegations in the SAC, Plaintiffs' belief that these exporters produce fake or adulterated honey appears to be founded solely on the fact that they are located in India, Vietnam, and Thailand.  In identifying each Importer Defendant, Plaintiffs state, "the honey purchased by [relevant Importer Defendant] from India, Vietnam, and Thailand contains syrups and/or is processed with resin technology . . ." and subsequently allege that Sunland's President "admitted in January 2010 that there is no white or extra light amber honey that originates from India, Vietnam, or Thailand . . . ."  (SAC ¶ 7.)  Similarly, as to Lamex, Plaintiffs allege that "[t]he honey purchased by Lamex from India, Vietnam, and Thailand contains extraneous syrups and/or is processed with resin technology which changes the honey's fundamental composition.  Lamex continues to import such "honey" from those countries and has done so during the Class Period."  (*Id.* ¶ 8; *see id.* ¶ 9.)

Plaintiffs' apparent assumption is that because a given shipment of honey originated from India, Vietnam, or Thailand, it must necessarily contain fake honey. Plaintiffs cannot satisfy the particularity requirement of Rule 9(b) simply by identifying shipments of foreign honey that the Importer Defendants received with an attached unsupported allegation that the exporter produces fraudulent honey, especially where that claim is seemingly based solely on the country where that exporter resides. Rule 9(b) requires that the complaint contain allegations covering the "who, what, when, where, and how" of the fraud alleged.  *Benavidez*, 993 F.3d at 1145.  Plaintiffs have only alleged the neutral facts of transactions.  This is insufficient to give Defendants the opportunity to respond to the misconduct alleged.  *Kearns*, 567 F.3d

1   at 1126.  Moreover, as alleged, Plaintiffs' allegations that these shipments contain fake

2   or adulterated honey appear to be based on information and belief.[3]  Such allegations

3   do not satisfy the particularity requirements of Rule 9(b) without Plaintiffs stating a

4   factual basis for that belief.  *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 541

5   (9th Cir. 1989); *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993).  To the extent

6   that the basis for the belief is a separate belief that India, Vietnam, and Thailand only

7   produce fake honey, that belief alone does not constitute a factual basis and is

8   unsupported except by a few disparate statements made over the course of a decade

9   by industry members.  (*See* SAC ¶¶ 103, 114.)

10      Allowing Plaintiffs to proceed based on these bare allegations would force

11   Defendants to defend against claims that their honey was "fake" and that they had

12   defrauded the United States honey market without the ability to address specific

13   allegations.  They would be forced to instead defend against far-reaching allegations

14   about the honey they import by simply denying wrongdoing rather than being able to

15   address the factual basis underlying the accusations.

16                    **2. Kejriwal Bee Care**

17      At oral argument, Plaintiffs' counsel indicated that the SAC had specifically

18   identified shipments to Defendants Sunland and Lamex from Kejriwal Bee Care India

19   (Pvt.) Ltd. ("Kejriwal Bee Care") as containing fake or adulterated honey.  (2/15/24 Tr.

20   at 40:10–13.)  However, Plaintiffs' counsel further clarified that this was solely based on

21   the claim that Prakash Kejriwal, who was allegedly involved in Kejriwal Bee Care in

22   some capacity, gave a presentation about resin technologies in January 2015 and

23   later was appointed Vice Chairman of True Source.  (*Id.* at 40:29–41:3 ("So . . . he gives

---

24

25   [3] At the beginning of the SAC, Plaintiffs state that "[b]ased on their own personal knowledge, or upon
     information and belief, including the investigation of their counsel, Plaintiffs allege as follows . . . ."

26   (SAC at 1.)  Plaintiff does not thereafter specify which allegations are made on personal knowledge and
     which are made on information and belief.  In this particular instance, however, based on the
     generalized and repeated nature of the allegations related to each shipment as well as the apparent

27   underlying basis for these claims being an assumption that because the honey in these shipments was
     produced in certain countries of origin, it appears clear that the allegations that each of these

28   shipments contained fake or adulterated honey are made on information and belief.

                                9

1  the presentation.  He shortly [sic] put on to the board.  Becomes vice chair of True

2  Source. . . . And then in paragraph 121, we allege that some of the Defendants have

3  imported honey from Kejriwal Bee Care, so I think there is at least some direct [sic]

4  there.")  Such allegations are insufficient to satisfy Rule 9(b).

5         Even ignoring that these allegations are specific to only a single exporter,

6  Plaintiffs have failed to identify the details of the fraud they have alleged.  In lieu of

7  such information, Plaintiffs simply assume, without factual support, that all honey

8  exported by Kejriwal Bee Care is fraudulent based on the presentation Mr. Kejriwal

9  gave in 2015, over two years prior to the start of the class period.  That Mr. Kejriwal

10  once gave a presentation on the use of resin technology does not provide Defendants

11  notice of the particular claims against them such that they can prepare a defense to

12  the claim they committed fraud.  Thus, while Plaintiffs identify these allegations as a

13  concrete example of adulterated honey being imported and sold by Defendants, in

14  reality, these allegations are still lacking in any specificity about the fraud alleged.

15  Plaintiffs' allegations about the import of honey from Kejriwal Bee Care are the same

16  neutral allegations as to the other exporters, with only the vague additional haze of

17  Mr. Kejriwal's presentation added.  Thus, these allegations fail to satisfy Rule 9(b) for

18  precisely the same reasons as the other shipment allegations as there is no

19  meaningful difference between them.

20         **3.  Other Allegations Related to Importer Defendants**

21         Beyond the listed shipments, the only other allegation in the SAC concerning

22  the Importer Defendants directly related to the alleged fraud is that in June 2018,

23  honey from Importer Defendant Odem was tested on the request of Packer

24  Defendant Barkman, and twenty-four samples originating from India "were found to

25  be adulterated with added sugar syrup."  (SAC ¶ 113.)  This is a single allegation

26  without any supporting factual information such as how the tested honey was

27  obtained, why it was tested, how it was tested, who performed the testing, and how

28

1   many samples were tested.[4]  The exceedingly limited information on this testing, in

2   addition to the limited nature of the allegation itself (relating only to a single instance

3   of testing), means these allegations cannot satisfy the particularity requirement.

4         Even with the inclusion of additional information on this point, the requirement

5   of Rule 9(b) would not be met.  This is not to say that such factual allegations would

6   not be relevant and the addition of such details would help the complaint comply with

7   Rule 9(b).   But even if this were included, it would still not provide Defendants with

8   the full "'. . . who, what, when, where, and how' *of the misconduct charged*[,]" *Kearns*,

9   567 F.3d at 1124 (emphasis added), such that Defendants would be on notice of the

10  particular fraud alleged.  As discussed below, *see infra* Discussion II.D, Plaintiffs

11  allegations concern a broad conspiracy between multiple tiers of defendants to

12  defraud the United States honey market over a period beginning in 2017.  Even if

13  alleged with substantially more detail, the fact, taken as true, that Defendant Barkman

14  once requested testing of honey from Defendant Odem and found the tested honey

15  question to be adulterated, is insufficient to provide particularity as to the full scope of

16  the misconduct Plaintiffs have alleged.  Defendants would be left in the same position

17  of defending against a generalized allegation that they had engaged in fraud in the

18  sale of honey without any of the specifics of the misconduct they purportedly

19  engaged in.

20        For these reasons, the allegations against the Importer Defendants fail to meet

21  the requirements of Rule 9(b).

22  ////

23

---

24  [4] At oral argument, Plaintiffs' counsel stated that 36 samples had been tested, resulting in a 75%
    positive rate for adulteration.  This further emphasizes the importance of the particularity requirement

25  of Rule 9(b).  Without clear allegations about what samples were tested, where they were sourced from,
    and which returned positive results, it is impossible for the Defendants to determine the factual basis of

26  the allegations that define the scope of Plaintiffs' claims.  Rather than being able to address
    particularized claims related to the specific honey that was adulterated, forming a defense that

27  considered the source of those specific honey samples, Defendant Odem would instead be forced to
    defend broad claims about the general legitimacy of their honey, despite some of the tested honey

28  being genuine and thus outside the scope of Plaintiffs' claims.

### C. Packer Defendants

Plaintiffs' allegations on the Packer Defendants, Barkman and Dutch Gold, are brief with little beyond conclusory statements that these defendants knowingly sold fake or adulterated honey.  The SAC includes only a handful of allegations about specific events connected to the Packer Defendants.

For Defendant Barkman, Plaintiffs again note Barkman's requested testing of honey imported by Importer Defendant Odem.  (*Id*. ¶ 135.)  As already detailed, this allegation lacks important details but, even if it were complete, would not satisfy Rule 9(b) by stating with particularity the details of the alleged misconduct given the breadth of what Plaintiffs have alleged.  *See supra* Discussion II.B.3.  The inclusion of an allegation that Defendant Barkman then turned to Defendant Intertek to perform testing instead might also assist by hinting at impropriety.  (*see* SAC ¶ 113.)   But again, this implication is insufficient to satisfy the particularity requirement by providing the details of the misconduct alleged.  *Kearns*, 567 F.3d at 1124.

In the description of the Packer Defendants in the section of the SAC identifying the Parties, Plaintiffs also allege Dutch Gold honey was tested and found to "contain extraneous non-honey syrups . . . ."  (SAC ¶ 11.)  Plaintiffs provide little to no information about these tests either in this beginning section or the single sentence where this test is later referenced in which Plaintiffs' allegation is , in its entirety, "[i]n September 2020, Dutch Gold 'honey' from Vietnam and India was tested by an accredited laboratory and found to contain extraneous non-honey syrups, meaning it is adulterated, fake honey."  (*Id*. ¶ 131.)  Plaintiffs do not identify how the honey tested was obtained, if the tested honey was sold to the public (and, if so, where and when it was sold) or if it was tested before it reached consumers, who requested the testing, and who performed the testing.  Notably, the allegation at paragraph 131 includes that the Dutch Gold honey in this test was "from Vietnam and India" though earlier in the SAC, Plaintiffs state that "[o]ften, the honey put out by the Packer Defendants is labeled (for example) as follows: 'Product of the United States, Canada, Brazil,

1   Argentina and India.'" (*See* SAC ¶¶ 131, 83.)  Thus, given Defendant Dutch Gold

2   apparently labels its honey with numerous countries of origin, it is extremely unclear

3   what the exact nature of the tested honey was given Plaintiffs have alleged it was

4   specifically sourced from Vietnam and India.  Information about the details and

5   context of this testing is vital for Defendants' ability to mount a meaningful defense

6   and the exact sort of information required by Rule 9(b).

7        Additionally, the allegation about the testing of Defendant Dutch Gold honey

8   fail to satisfy Rule 9(b) for similar reasons as the allegations regarding the testing of

9   Defendant Odem's honey; they do not provide meaningful information about "'the

10  who, what, when, where, and how' *of the misconduct charged*." *Kearns*, 567 F.3d at

11  1124 (emphasis added).  This allegation, even with additional detail, would not

12  provide Defendants with sufficient notice so they can defend against the full breadth

13  of Plaintiffs' claims.

14      **D.  The SAC Fails to Meet the Particularity Requirement of Rule 9(b)**

15       Considered separately and as a whole, the allegations in the SAC fail to satisfy

16  the particularity requirement for a complaint grounded in fraud.  Plaintiffs' allegations

17  are largely conclusory claims and those that relate to concrete events are both

18  insufficient to support Plaintiffs' claims alone and lack the necessary "who, what, when,

19  where, and how" of the alleged fraud.  *Kearns*, 567 F.3d at 1126.  Significantly, while

20  Plaintiffs admit that some allegations are made on information and belief, they avoid

21  noting which allegations are made on that basis by simply stating at the beginning of

22  the SAC that "[b]ased on their own personal knowledge, or upon information and

23  belief, including the investigation of their counsel, Plaintiffs allege as follows." (SAC at

24  1.)  "[A]llegations of fraud based on information and belief usually do not satisfy the

25  particularity requirements under rule 9(b)." *Moore*, 885 F.2d at 540.  While the

26  allegations in the SAC are already insufficient to satisfy Rule 9(b), the failure to specify

27  what allegations have any real basis casts a shadow of uncertainty over the factual

28  basis for all of Plaintiffs' claims.  Even where Plaintiffs allegations could partially satisfy

1  the specificity required by Rule 9(b), such as with the testing of Defendant Odem's

2  honey, *see supra* Discussion II.B.3, these allegations still fail to address the full scope

3  of the underlying claims with necessary particularity.

4         Plaintiffs' claims are far-reaching and the sort that invoke the core purposes of

5  Rule 9(b). "Rule 9(b) serves three purposes: (1) to provide defendants with adequate

6  notice to allow them to defend the charge and deter plaintiffs from the filing of

7  complaints 'as a pretext for the discovery of unknown wrongs'; (2) to protect those

8  whose reputation would be harmed as a result of being subject to fraud charges; and

9  (3) to 'prohibit [ ] plaintiff[s] from unilaterally imposing upon the court, the parties and

10  society enormous social and economic costs absent some factual basis.'" *Kearns*, 567

11  F.3d at 1125. Plaintiffs allege the existence of a broad conspiracy spanning multiple

12  corporations and organizations that have acted with the intent to defraud the United

13  States honey market. To permit Plaintiffs to proceed on their limited relevant factual

14  allegations would frustrate each of those purposes. The SAC does not give

15  Defendants adequate notice to allow them to defend the charge and clearly serves as

16  an avenue for Plaintiffs to obtain discovery to discovery "unknown wrongs" by the

17  Defendants. The claims levied against Defendants also serve as a cloud over their

18  reputation. Finally, permitting this suit to proceed to discovery and beyond on the

19  minimal factual basis presented would impose substantial social and economic costs

20  on the parties and Court.

21         By failing to include specific factual allegations to support Plaintiffs' claims, the

22  SAC violates both the particularity requirement of Rule 9(b) and the purposes

23  underlying it. Accordingly, the Court grants Defendant's Joint Motion to Dismiss

24  based on Plaintiffs failure to meet the requirements of Rule 9(b).

25      **III.**    **Leave to Amend**

26         Having granted leave to amend, the Court must now turn to whether leave to

27  amend is warranted. "In general, leave to amend is only denied if it is clear that

28  amendment would be futile and that the deficiencies of the complaint could not be

14

1  cured by amendment." *Cabo Distrib. Co. v. Brady*, 821 F. Supp. 601, 608 (N.D. Cal.

2  1992) (cleaned up); *see also Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en

3  banc) ("[A] district court should grant leave to amend . . . unless it determines that the

4  pleading could not possibly be cured by the allegation of other facts.") (citation

5  omitted).

6        Plaintiffs' prior complaint was dismissed based on its insufficiency under Rule

7  9(b).  (*See* ECF No. 95.)  District Judge Troy L. Nunley found that the prior complaint

8  "[did] not allege any degree of particularity that would allow the Defendants to

9  prepare a defense[,]" but granted Plaintiffs leave to file an amended complaint.  (*Id*. at

10  6–7.)  The SAC currently before the Court is notably similar to the complaint dismissed

11  by Judge Nunley.  The only new non-conclusory allegations relevant to the alleged

12  fraud are brief and concern the alleged bribe accepted by NSF (*see* SAC ¶ 98) and the

13  testing of the Packer Defendants' honey (*see id*. ¶¶ 10–11).  None of the additions

14  provided in response to Judge Nunley's order meet the requirements of Rule 9(b).

15        At oral argument on the present motion, the Court questioned Plaintiffs

16  regarding what they could add in a further amended complaint.  Plaintiffs' counsel

17  responded that they could add more information about the usage of resin

18  technologies and the harvesting of immature honey being "widely known".  (2/15/24

19  Tr. at 40:6–9.)  Counsel later added:

20          [W]e can do, I think, at least a couple things: We can talk to
21          our witnesses and see, now that times has passed, how
             much more willing they are to allow us to put certain
22          additional details, like, for example, the laboratories into
             the Complaint.
23

24          I believe that we have some samples that could be – some
             additional samples that haven't been tested have just been
25          saved from some time ago that could be tested. We can
             add the PowerPoint presentation. We could certainly add
26          more information about the techniques and stuff going on
             in terms of the resin and so forth.
27

28

1   (*Id.* at 43:9–19.)  Even if it were included in an amended complaint, this information

2   would be insufficient to satisfy the particularity requirement.  Plaintiffs were only able

3   to point to information about testing already performed or hypotheticals about

4   samples "from some time ago" that could be tested.  While this might help resolve

5   some of the issues identified above, it does not come close to providing the details of

6   the fraud alleged to satisfy Rule 9(b).  For example, even with the benefit of more

7   details about the testing of Defendant Odem's honey, these allegations would only

8   provide supplementary information without going to the core of what Plaintiffs have

9   alleged.  *See supra* Discussion II.B.3.

10         Plaintiffs' claims are still of a large-scale conspiracy to commit fraud.  The

11   potential inclusions on amendment fail to provide necessary "who, what, when, where,

12   and how" information, such that Defendants would be afforded the opportunity to

13   prepare a defense to the claims against them.  And importantly, due to the transfer of

14   the case from Judge Nunley to the undersigned, Plaintiffs have had a significant

15   amount of time to continue to gather information to further bolster their complaint but

16   are unable to identify concrete meaningful additions that could be included in an

17   amended complaint.

18         Given Plaintiffs' failure to fix the deficiencies of their complaint in their previous

19   amendment attempt and their inability to indicate how these issues could be cured

20   with further amendment, the Court will not grant leave to file a further amended

21   complaint as to the Defendants who joined in the Joint Omnibus Motion to Dismiss.

22                                      **DEFENDANT INTERTEK**

23         While Defendant Intertek has not appeared or joined the Motions to Dismiss

24   filed by the other defendants, the defects described above apply the equally to all

25   defendants.  *See Nasser v. Julius Sammann Ltd.*, No. 17-cv-0863-BTM-MDD, 2017 WL

26   3492164, at *2 (S.D. Cal. Aug. 15, 2017); *see also Omar v. Sea-Land Serv., Inc.*, 813

27   F.2d 986, 991 (9th Cir. 1987).  Thus, the Second Amended Complaint and this action

28   shall be dismissed in its entirety.

1

**CONCLUSION**

2          For the reasons stated above, IT IS HEREBY ORDERED that:

3    1.  Defendants' Joint Omnibus Motion to Dismiss (ECF No. 103) is GRANTED and

4        this action is dismissed with prejudice.

5    2.  Defendants' other pending Motions to Dismiss (ECF Nos. 102, 104, 106, 107,

6        108) as well as Defendants' Motion to Stay (ECF No. 127) are DENIED AS

7        MOOT.

8    3.  The Clerk of the Court is directed to close this case.  This order resolves all

9        pending motions.

10

11

12          IT IS SO ORDERED.

13    Dated:   **September 12, 2024**

14                                                    Hon. Daniel J. Calabretta
                                                     UNITED STATES DISTRICT JUDGE

15

16

17

18

19

20

21    DJC1 – HBB21cv00582.MTD

22

23

24

25

26

27

28

17